United States *v.* Grasselli Chemical Co. (No. 940).[1]

Hewn Lava Stone—Building Stone.

  The hewn lava stone of the importation is employed in the construction of chimneys, being used as lining to carry the inner surface of the chimney from the bottom to within 2 feet of the shaft's top, and the stone had been prepared for this purpose. It is held to be a building stone and dutiable as such under paragraph 114, tariff act of 1909.—Manufacturers' Paper Co. *v.* United States (3 Ct. Cust. Appls., 72; T. D. 32353) distinguished.

United States Court of Customs Appeals, January 20, 1913.

Appeal from Board of United States General Appraisers, Abstract 28511 (T. D. 32529).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, on the brief), for the United States.
*Brown & Gerry* for appellee.

  Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Montgomery, Presiding Judge, delivered the opinion of the court:

  The merchandise in question consists of hewn lava stone cut into special shapes adapted for use and used as linings for the towers or chimneys of factories. Duty was assessed thereon at the rate of 50 per cent ad valorem under paragraph 114 of the tariff act of 1909, which provides for—

Freestone, granite, sandstone, limestone, and all other monumental or building stone, except marble, breccia, and onyx, not specially provided for in this section, hewn, dressed, or polished, or otherwise manufactured, * * *.

The protest made various claims, but the reliance of the importer seems to be that the goods were dutiable under paragraph 480 at 20 per cent ad valorem as unenumerated manufactured articles. The evidence as to use of these stones is that furnished by the importer's witness, and discloses that they are imported in different shapes, but are cut so as to fit a circle and are used for the inside lining of chimneys, which chimneys are used in the manufacture of sulphuric acid. The stone is especially adapted to this use, and is designed to protect the lead lining of the outer portion of the chimney, which will not withstand the action of sulphuric acid. The question presented is

---

[1] Reported in T. D. 33123 (24 Treas. Dec., 99).

whether the stone adapted to this use are building stone within the meaning of paragraph 114.

A chimney is defined in the Century Dictionary as—

A vertical structure containing a passage or main flue by which the smoke of a fire or furnace escapes to the open air * * *. Chimneys are commonly built of brick or stone. The chimneys of some kinds of factories, as chemical works, are built to a great height, sometimes several hundred feet, and often as independent structures.

There is no limitation of the term "building stone" in the paragraph. The term is not restricted to such stones as are used for the outer walls of buildings. The exception from the provisions of the paragraph of marble, breccia, and onyx would indicate that any stone other than these excepted, used for interior decoration, would be within the provisions of the paragraph. Nor does any good reason occur to us why any stone used in the interior of a building would not be properly designated as building stone. The entire inner surface of this structure is composed of stone of the character here in question. It is carried from the bottom to within two feet of the top of the shaft of the chimney in a solid structure. The structure is built by the use of these stones. Without them its form could not be maintained, and we feel constrained to hold that they are, within the ordinary acceptation of the term, building stone.

The board in sustaining the contention of the importer relied upon the case of Manufacturers' Paper Co. *v.* United States (3 Ct. Cust. Appls., 72; T. D. 32353). That case presented a different question. The stones which were imported were not fitted for or adapted to use as building stones in the form imported. It was said of the importation:

True, these blocks might be broken in pieces and portions of them made use of. They might be ground up and used in that form. But in the form in which imported, they are not adapted to use as building stone. The fitness of the native stone for such use has been destroyed, and it has been devoted to a new use.

If the board proceeded upon the view that the case cited was intended to hold that lava stone is not under any circumstances building stone, this was error, for the case did not so decide. The fact that this stone is soft and porous is a fact which may be considered in a given case in determining whether it is adapted to use as a building stone, but when we find, as in this case, that it is not only adapted to but devoted to that use, it falls directly within the terms of paragraph 114. See on this subject United States *v.* Batterson (T. D. 26319 and T. D. 23030). In the latter case it was said:

The testimony here conclusively shows that lava rock is used as a building stone. The witness for the Government positively proves this fact, and the witness for the importer admits that it may be so used.

In the present case the evidence is still more specific. It goes to the extent of showing not only that lava rock may be so used, but

that it is in fact so used, and that the particular importation in question is made for the purpose of use as building stone.

It follows that the decision of the Board of General Appraisers should be *reversed* and the classification of the collector sustained. It is so ordered.